580 P.2d 369

Trinidad C. SEGOVIA, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Phelps Dodge Corporation, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 1659.

Court of Appeals of Arizona, Division 1, Department C.

April 18, 1978.

Rehearing Denied June 6, 1978.

Review Denied June 27, 1978.

232

Davis, Eppstein & Tretschok, P. C. by Robert W. Eppstein, Tucson, for petitioner.

John H. Budd, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for The Industrial Commission of Arizona.

Evans, Kitchel & Jenckes, P. C. by James G. Speer, Phoenix, for respondents employer and carrier.

Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix, for respondent carrier.

## OPINION

WREN, Judge.

Petitioner, Trinidad C. Segovia, incurred an industrial injury to his left ankle on July 10, 1973. The matter was closed as stationary on July 30, 1975 with a scheduled thirty (30) per cent disability to the left lower extremity. Petitioner thereafter filed a request for hearing, contending he had incurred an unscheduled disability in that the ankle injury was the causal factor of an injury to his right arm which he claimed occurred on or about May 10, 1974 while exiting a car and attempting to brace himself against the pain in his ankle. The hearing officer found that petitioner had failed to sustain his burden of proving that the injury to the arm was a result of the prior industrial injury to the ankle. We agree and therefore affirm the award.

On special action to this Court petitioner contends that (1) there was no evidence on which the hearing officer could have based his decision that the petitioner failed to prove a causal relation between the arm injury and the residuals of the leg injury; and (2) there was an improper attempt to impeach him by bad acts and the introduction of a felony conviction.

As to the first question, petitioner has set before us various portions of the medical testimony which he claims support his position that the arm condition was causally related to the earlier industrial case involving the ankle. It is to be noted however, that the history given by petitioner to the various physicians was not only equivocal as to the time and causation, but also that the record reflects petitioner was seen on May 16, 1974 by D. Foster, M.D., and the doctor noted that petitioner "fell on right arm getting out of car." The diagnosis was "neurologic and tendons intact." Moreover, the arm incident purportedly occurred about fifteen months before it was first raised by petitioner, and it is apparent that the medical testimony relative thereto was not only conflicting but was based on non-medical factual assumptions.

 In the pivotal finding on this issue the hearing officer found "the Commission need not presume that the applicant's testimony is true where there is no corroboration by disinterested witnesses and where the claimant's testimony is impeached by the medical evidence itself." The hearing officer may properly reject a claimant's testimony where it is inherently inconsistent and contradictory and where inferences can be drawn from other testimony which cast doubt upon its credibility. *Wimmer v. Industrial Commission*, 15 Ariz.App. 543, 489 P.2d 1245 (1971). He may also reject the claimant's uncorroborated testimony when it is contradicted and impeached by the medical evidence. *Lee v. Industrial Commission*, 15 Ariz.App. 302, 488 P.2d 507 (1971). As previously stated petitioner was medically examined several days after the purported car episode and his tendon (the claimed injury) was intact. Medical testimony also established that a torn biceps tendon can rupture without any trauma solely because of attritional wear and tear on the tendon. In this case a causal connection between the car episode and the arm condition was an issue to be resolved by the hearing officer and the evidence supports the findings and conclusion he reached.

We turn next to petitioner's central argument. He testified in this case at the first hearing on January 27, 1976. Some seven months later, on September 7, 1976, counsel for the carrier recalled petitioner to the witness stand. The hearing officer, after an in limine proceeding, permitted the carrier to impeach petitioner with evidence of a felony conviction which had occurred during the interim. Petitioner asserts that since the felony conviction occurred *after* he had already testified at the first hearing, the evidence should have been excluded as irrelevant and prejudicial. Further, he argues that counsel for the carrier went too far in cross-examination as to the felony conviction in that he also questioned him as to the particulars of the crime. Specifically petitioner objects to the following question:

"Q. Mr. Segovia, in the course of this year, you have been brought to trial as a defendant in a case involving some six counts of violations of marijuana, is that correct?"

It is obvious from the record that the carrier recalled the petitioner solely for the purpose of the impeachment. Petitioner argues that the language "prior" conviction contained in the Arizona cases discussing this subject necessitates the award be set aside because, he contends, a witness' credibility cannot be affected by the fact that he committed and was convicted of a felony after his testimony and it cannot be implied he was a felon by nature before the commission of the felony.

■ The carrier counters by arguing that since the award entered by the Commission was totally silent as to evidence of a felony conviction there is no basis upon which petitioner's argument that the evidence affected the outcome can be supported. We do not agree. The mere absence of the impeachment evidence from the findings of the hearing officer does not render the question moot. The credibility of the petitioner was obviously a matter for the hearing officer's consideration, *Bragg v. Industrial Commission*, 71 Ariz. 37, 223 P.2d 180 (1950), and it is to be presumed that he deliberated upon the subject of the felony conviction. *See Feak v. Lacamas Valley Ranch*, 34 Wash.2d 798, 210 P.2d 133 (1949).

■ In any event, the carrier further argues, the impeachment was proper. We agree. The hearing in question was a part of a proceeding to determine what award should be entered and the credibility of the petitioner was still before the hearing officer. It appears to us that a conviction of a felony occurring shortly after the testimony of a witness might have far more bearing on his credibility at the time he testified than a felony conviction which occurred some years prior and which has been almost uniformly held admissible. *See* Udall, Arizona Law of Evidence, § 67 (1960). The cases refer to a "prior" conviction because that is the usual situation. *See, e. g., State v. Sorrell*, 85 Ariz. 173, 333 P.2d 1081 (1959); *State v. Harris*, 73 Ariz. 138, 238 P.2d 957 (1951). In other words, a felony conviction closely following the testimony of a witness might have far more relevancy to his credibility at the time he testified than a conviction occurring a greater period prior to the testimony, and which, under case law, would have been admissible. *Compare State v. Owen*, 101 Ariz. 156, 416 P.2d 589 (1966) *with Rattancraft of California v. United States*, 68 Cust.Ct. 303, 336 F.Supp. 1401 and 68 Cust.Ct. 243, 340 F.Supp. 978 (1972).

The inquiry as to the felony conviction itself being proper, it was not improper to also probe the particulars of the offense. *See* Udall, Arizona Law of Evidence, § 67 (1960).

Affirmed.

DONOFRIO, P. J. and SCHROEDER, J., concurring.