NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE LEGAL
PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ARTHUR J. O'CONNOR, *Appellant*,

*v.*

ARIZONA MEDICAL BOARD, *Appellee*.

No. 1 CA-CV 13-0533
FILED 07-29-2014

Appeal from the Superior Court in Maricopa County
No. LC2012-000172-001
The Honorable Crane McClennen, Judge

**AFFIRMED**

COUNSEL

Quintairos Prieto Wood & Boyer, P.A., Phoenix
By Daniel P. Jantsch
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Anne Froedge
*Counsel for Appellee*

## MEMORANDUM DECISION

Judge Patricia K. Norris delivered the decision of the Court, in which Acting Presiding Judge Maurice Portley and Judge Andrew W. Gould joined.

**N O R R I S**, Judge:

**¶1**         On appeal, Arthur J. O'Connor, M.D., argues the Arizona Medical Board ("the Board")[1] failed to make sufficient findings and violated his due process rights in considering certain evidence when it revoked his medical license for unprofessional conduct. Based on the record and applicable law, we disagree with these arguments and affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**         O'Connor was a general surgeon licensed to practice allopathic medicine in Arizona. The Board is the statutorily created entity whose "primary duty . . . is to protect the public from unlawful . . . or unprofessional practitioners of allopathic medicine through licensure, regulation and rehabilitation of the profession in this state." Ariz. Rev. Stat. ("A.R.S.") § 32-1403(A) (2007).[2] "The powers and duties of the [B]oard include . . . [i]nitiating investigations and determining on its own motion if a doctor of medicine has engaged in unprofessional conduct . . . ." A.R.S. § 32-1403(A)(2).

**¶3**         In July 2011, the Board filed a complaint to revoke O'Connor's medical license. The Board alleged O'Connor had interactions with five patients that constituted "unprofessional conduct" pursuant to

_____

[1]Pursuant to Arizona Revised Statutes § 32-1401(6) (Supp. 2013), we substituted the Arizona Medical Board for the Arizona State Board of Medical Examiners as the Appellee in this matter. *See* ARCAP 27(b).

[2]Although the Arizona Legislature amended statutes cited in this decision after the date of the first patient complaint to the Board, the revisions are immaterial in this appeal. Thus, we cite to the current version of these statutes.

A.R.S. § 32-1401(27) (Supp. 2013). As relevant here, "[u]nprofessional conduct" includes: (1) "[e]ngaging in sexual conduct with a current patient" unless one of two exceptions inapplicable to this case are present and (2) "[k]nowingly making a false or misleading statement to the [B]oard or on a form required by the [B]oard or in a written correspondence, including attachments, with the [B]oard." A.R.S. § 32-1401(27)(z), (jj).

**¶4** The Board based its complaint on three investigations it conducted from 2010 to 2011. In case number MD-10-0988A ("Case 1"), the Board alleged O'Connor sexually abused patient T.M. In case number MD-10-1392A ("Case 2"), the Board alleged O'Connor sexually abused patients J.P. and M.T. In case number MD-11-0006A ("Case 3"), the Board alleged O'Connor failed to disclose to the Board two other allegations of sexual abuse made in 2003 and 2005 by patients M.T. and C.W.[3]

**¶5** In September 2011, an Administrative Law Judge ("ALJ") conducted an administrative hearing. At the hearing, patients M.T., J.P., and T.M., O'Connor, and other witnesses testified. The Board and O'Connor also offered into evidence various exhibits regarding the substantive allegations of the patients in Cases 1 and 2, the credibility of the witnesses, and the disclosures made by O'Connor to the Board at issue in Case 3.

**¶6** Following the hearing, the ALJ found O'Connor sexually abused patients T.M. and M.T. and concluded O'Connor violated A.R.S. § 32-1401(27)(z) in Cases 1 and 2 and A.R.S. § 32-1401(27)(jj) in Case 3. The ALJ recommended that O'Connor's license be revoked. In December 2011, the Board adopted the ALJ's findings of fact and conclusions of law and revoked O'Connor's medical license due to unprofessional conduct.[4] In February 2012, the Board denied O'Connor's request for rehearing.

**¶7** After exhausting his administrative remedies, O'Connor sought judicial review of the Board's order. The superior court affirmed the Board's order, and O'Connor timely appealed.

---

[3]O'Connor had disclosed to the Board the allegations by T.M. and J.P., as well as allegations by a fifth patient, D.H.

[4]The Board adopted the ALJ's findings of fact and conclusions of law with minor changes not relevant here.

## DISCUSSION

I.      Sufficiency of the Board's Findings and its Resolution of Conflicting Testimony in Cases 1 and 2

**¶8**          Citing *Post v. Industrial Commission*, 160 Ariz. 4, 770 P.2d 308 (1989), O'Connor first argues the Board failed to make sufficient factual findings.  We disagree.  In the administrative decision in *Post*, "[T]he judge made no factual findings of consequence, resolved no conflicts in the evidence, and set forth no conclusions applying law to fact.  Instead, after quoting some testimony and citing general principles of workers' compensation law, he simply set forth the ultimate legal conclusion . . . ."  160 Ariz. at 5, 770 P.2d at 309.  As a result, an appellate court "ha[d] no way of evaluating the basis of the judge's award and consequently [could not] determine the factual support for, or the legal propriety of, his conclusion."  *Id.* at 7, 770 P.2d at 311.  In this case, the Board made factual findings of consequence, resolved conflicts in the evidence, and set forth conclusions applying law to fact.  Therefore, the Board made sufficient findings of fact to support its conclusions.

**¶9**          O'Connor also challenges the Board's resolution of evidentiary conflicts, for example "the 'he said/she said' evidence" at issue in Cases 1 and 2.  In reviewing an administrative agency's decision, this court "will only search the record to determine whether the evidence is of a substantial nature to support the lower court's decision."  *Croft v. Ariz. State Bd. of Dental Exam'rs*, 157 Ariz. 203, 207-08, 755 P.2d 1191, 1195-96 (App. 1988) (citation omitted).  We will uphold the Board's adoption of the ALJ's credibility findings if there is substantial evidence in the record to support that decision.  *See Ritland v. Ariz. State Bd. of Med. Exam'rs*, 213 Ariz. 187, 192, ¶ 15, 140 P.3d 970, 975 (App. 2006); *W. States Petroleum, Inc. v. Ariz. Dep't of Envtl. Quality*, 232 Ariz. 252, 253, ¶ 7, 304 P.3d 539, 540 (App. 2013) ("Issues regarding witness credibility are for the ALJ to decide, not the superior court or this court." (citation omitted)).

**¶10**         Although the Board did not explicitly explain how it resolved the conflicting testimony in Cases 1 and 2, its analysis is implicit in its decision.  *See Pearce Dev. v. Indus. Comm'n*, 147 Ariz. 582, 583, 712 P.2d 429, 430 (1985) (The acceptance of certain testimony was "implicit in the award" because "[t]he administrative law judge could not have reached the result he did unless he also had resolved the conflict in the . . . evidence.").  In Cases 1 and 2, the Board necessarily found patients T.M. and M.T. credible by (a) finding patient J.P. was not credible and (b)

concluding O'Connor violated A.R.S. § 32-1401(27)(z). The Board's credibility analysis is also evident from the presence of the verb "allege" throughout the findings of fact regarding patient J.P. and its absence from the findings of fact regarding patients T.M. and M.T. Further, after the Board rendered its decision, O'Connor requested a rehearing, arguing the Board had not properly considered the conflicting evidence. At its February 2012 hearing, the Board heard arguments on O'Connor's request, entered into executive session, and voted nine to one to deny the request for rehearing. Arizona Medical Board, Final Minutes for Reg. Sess. Meeting (Feb. 1, 2012), at 8, *available at* http://www.azmd.gov/MinutesUploads/minutes/February%202012%20 AMB%20Final%20Minutes.pdf.[5] Based on our review of the record, substantial evidence supports the Board's resolution of the conflicts in the evidence.

II.     Admission of Evidence of Allegations by Patients C.W. and D.H.

**¶11**     O'Connor next argues the Board violated his due process rights by considering exhibits the ALJ admitted into evidence concerning allegations made by patients D.H. and C.W. because neither patient testified at the administrative hearing and thus he was not able to cross-examine them. We review constitutional issues, including an alleged violation of due process, de novo. *Carlson v. Ariz. State Pers. Bd.*, 214 Ariz. 426, 430, ¶ 13, 153 P.3d 1055, 1059 (App. 2007). We review the ALJ's admission of evidence for an abuse of discretion. *See Epperson v. Indus. Comm'n*, 26 Ariz. App. 467, 471, 549 P.2d 247, 251 (1976) ("Hearing officers, like trial judges, have broad discretion in determining whether to admit matters into evidence.").

**¶12**     "Procedural due process means that a party had the opportunity to be heard at a meaningful time and in a meaningful manner. The elements of procedural due process are notice and an opportunity to be heard." *Comeau v. Ariz. State Bd. of Dental Exam'rs*, 196 Ariz. 102, 106-07, ¶ 20, 993 P.2d 1066, 1070-71 (App. 1999) (citations omitted) (internal quotation marks omitted). "A party also enjoys a due

---

[5]Although these minutes are not part of the record on appeal, we may take judicial notice of the records of a state agency. *See Jarvis v. State Land Dep't,* 104 Ariz. 527, 530, 456 P.2d 385, 388 (1969), *modified on other grounds by* 106 Ariz. 506, 479 P.2d 169 (1970) *and by* 113 Ariz. 230, 550 P.2d 227 (1976). The Board's minutes are also available on file with the Arizona Court of Appeals, Division One.

process right to offer evidence and confront adverse witnesses." *Gaveck v. Ariz. State Bd. of Podiatry Exam'rs*, 222 Ariz. 433, 437, ¶ 14, 215 P.3d 1114, 1118 (App. 2009) (citation omitted).

**¶13** During the hearing, the ALJ admitted into evidence two exhibits regarding patient D.H. and four exhibits regarding patient C.W., including internal hospital documents and contemporaneous police reports involving their allegations. Although O'Connor was not able to cross-examine either patient, he was not deprived of a fair hearing in violation of his due process rights.[6] First, the ALJ admitted the exhibits related to patient D.H. for the limited purpose of providing context for the Board's investigative history of O'Connor. Second, testimony from patient C.W. about the substance of her allegations was unnecessary to establish a violation of A.R.S. § 32-1401(27)(jj), which requires "[k]nowingly making a false or misleading statement to the [B]oard." O'Connor had the opportunity to refute the charge in Case 3 by demonstrating that he did not know of the allegations by patients C.W. and M.T. at the time he made particular statements to the Board. Further, nothing in the record indicates the Board's findings of fact or conclusions of law relied on the truth of the allegations by patients D.H. and C.W. Thus, the Board did not violate O'Connor's due process rights or abuse its discretion in considering this evidence.

III. Admission of the Sante Report

**¶14** O'Connor next argues the Board violated his due process rights by considering a report written by the Sante Center for Healing ("Sante Report") during the Board's investigation. According to O'Connor, the Sante Report had no "acceptable evidentiary purpose" because he had already admitted he had failed to disclose the allegations of patients M.T. and C.W. to the Board and "a fact which is judicially admitted need not be proved and cannot be disproved." *See Clark Equip. Co. v. Ariz. Prop. & Cas. Ins. Guar. Fund*, 189 Ariz. 433, 439, 943 P.2d 793, 799 (App. 1997) ("A judicial admission is . . . therefore to be taken for granted; so that the one party need offer no evidence to prove it and the other is not allowed to disprove it" (citation omitted)). Although O'Connor is correct that a judicially admitted fact need not be proved, that principle is inapposite here.

---

[6]O'Connor does not otherwise argue these exhibits prejudiced his right to a fair hearing.

¶15        At the hearing, O'Connor attempted to argue his level of intent regarding his failure to disclose the allegations to the Board. The Board offered the Sante Report for the purposes of (a) establishing the extent to which O'Connor knew about the allegations by all five patients, (b) attempting to show a pattern of conduct, and (c) impeachment. Assuming without deciding that evidence overlapping with a judicially admitted fact is inadmissible, the Board's use of the Sante Report did not overlap with O'Connor's judicially admitted facts and the Board did not abuse its discretion by considering the Sante Report.

¶16        O'Connor also argues the Sante Report was inadmissible because the Board did not provide the "files/raw data" gathered by Sante, and thus O'Connor was unable to counter the evidence in the Sante Report. We disagree. The record reflects the Board informed O'Connor at least one month before the hearing that it did not have these materials.[7] And, O'Connor has cited no legal authority establishing that the Board was affirmatively obligated to obtain this information for him.

¶17        O'Connor also contends the Sante Report was inadmissible because its contents "were detrimental and subject to creating bias and prejudice in the mind of [the] ALJ." We presume an ALJ and administrative agency, like a trial judge, are free of bias and prejudice. *Cf. State v. Hurley*, 197 Ariz. 400, 404, ¶ 24, 4 P.3d 455, 459 (App. 2000) ("A trial judge is presumed to be free of bias and prejudice." (citations omitted)). Here, O'Connor does not identify anything in the record, other than the Board's unfavorable decision, potentially demonstrating bias. Because the Board's decision, by itself, cannot serve as the basis for a claim of bias, we reject this argument. *Cf. State v. Henry,* 189 Ariz. 542, 546, 944 P.2d 57, 61 (1997) ("Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible" (citations omitted) (internal quotation marks omitted)).

---

[7]The record does not reflect that O'Connor contacted Sante to obtain the "files/raw data."

**CONCLUSION**

¶18      For the foregoing reasons, we affirm the superior court's decision affirming the Board's order revoking O'Connor's license.



Ruth A. Willingham · Clerk of the Court
FILED: gsh