NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

VERONICA S. PATE, *Petitioner Employee,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA,
*Respondent,*

SMITH'S FOOD AND DRUG CENTERS, INC.,
*Respondent Employer,*

SMITH'S FOOD AND DRUG CENTER
C/O SEDGWICK CMS,
*Respondent Carrier.*

No. 1 CA-IC 18-0032
FILED 1-31-2019

Special Action - Industrial Commission
ICA Claim No. 20170-870334
Carrier Claim No. 30153864611-0001
The Honorable Michelle Bodi, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Snow Carpio & Weekley PLC, Phoenix
By Dennis R. Kurth
*Counsel for Petitioner*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent, ICA*

Lundmark, Barberich LaMont & Slavin P.C., Phoenix
By Lisa M. LaMont, Danielle Vukonich
*Counsel for Respondent Employer and Carrier*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Jennifer M. Perkins joined.

---

**B R O W N**, Judge:

¶1        Veronica Pate challenges an Industrial Commission of Arizona ("ICA") award finding she did not suffer a compensable injury. Because reasonable evidence supports the award, we affirm.

**BACKGROUND**

¶2        While working for a predecessor of Smith's Food & Drug Centers, Pate was injured when she fell on a wet floor in April 2015. In March 2017, Pate filed a claim for workers' compensation benefits based on this fall. Her employer and its insurer denied the claim, and also asserted that Pate's claim was time-barred because it was not filed within one year after the injury occurred. *See* Arizona Revised Statutes § 23-1061. Pate timely requested a hearing.

¶3        The ALJ heard testimony from Pate, as well as the conflicting medical opinions of Doctors Lederman and Theiler. Pate testified that when she fell, her right shoulder hit a cabinet as she went to the floor and she felt immediate pain in that shoulder. Though her pain persisted, Pate continued working for the next two years. During that time, she complained to her physician of pain in her right arm that she believed was caused by carpal tunnel. Subsequent testing revealed she did not have carpal tunnel, but doctors did not provide an alternative diagnosis to explain her shoulder pain. Pate continued working and participated in increasingly strenuous job duties. Her pain worsened until mid-2017, when she finally informed a nurse practitioner about pain in her right shoulder that had started a year earlier when she was swimming. An MRI conducted

2

soon after showed that Pate had a "full thickness rotator cuff tear" in her right shoulder.

¶4        Theiler, a board-certified orthopedic surgeon, conducted an independent medical exam of Pate. He testified that, after reviewing a surveillance video of the incident, "there didn't appear to be anything significant about the fall" because Pate got up without exhibiting visible signs of pain. Theiler also performed a limited physical exam of Pate, noting she experienced an amount of pain that was "unusual and . . . consistent with rather severe symptom amplification." Based on this physical exam, his review of the video, and because Pate sought intervening medical treatment for other injuries and continued to work, Theiler concluded Pate's injury was not attributable to the April 2015 fall. None of the information Pate provided him with, he explained, would make sense if he assumed that she did in fact tear her rotator cuff when she fell.

¶5        Lederman, a board-certified orthopedic surgeon, testified on Pate's behalf. Lederman reviewed the employer's original report of the injury, the reports of other doctors who examined her, and the MRI, and performed a limited physical exam of Pate. He opined "within a reasonable degree of probability, that the fall was the only injury of substantial force to cause a complete tear of the rotator cuff." Unlike Theiler, however, Lederman did not review the surveillance video showing Pate's fall.

¶6        The ALJ ruled that the claim was not time-barred because Pate first "became aware of the nature, seriousness, and compensable nature of her injury in March 2017." The ALJ then determined that Pate failed to establish she sustained a compensable injury on April 26, 2015, explaining that Theiler's opinion on causation was "most probably correct and well-founded." In her request for review Pate asserted the ALJ needed to make a factual finding regarding her credibility, relying on *Post v. Industrial Commission*, 160 Ariz. 4 (1989). Although disagreeing that Pate's credibility was a material issue, the ALJ found Pate credible. Even so, the ALJ went on to clarify that the dispositive issue in this case was "medical causation." Pate now seeks review by this court.

## DISCUSSION

### A.      Dr. Theiler's Opinion

¶7        Pate first contends that because Theiler concluded Pate was not credible and injured her shoulder swimming, the ALJ's finding that she was credible eliminates the factual basis for Theiler's opinion.

3

**¶8**            In reviewing the ICA's awards and findings, we defer to the ALJ's factual findings but review legal questions de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). To establish a compensable claim, an injured worker must prove the injury suffered was causally related to the industrial accident, "which must be proved by competent medical evidence when the results of the incident are not apparent to a layman." *Yates v. Indus. Comm'n*, 116 Ariz. 125, 127 (App. 1977) (collecting cases). The ALJ must resolve conflicting evidence and "determine which of the conflicting testimony is more probably correct," a particularly important duty when there is a conflict in expert testimony. *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398 (1975). When the ALJ resolves such a conflict, we will not disturb that conclusion unless wholly unreasonable. *Royal Globe Ins. Co. v. Indus. Comm'n*, 20 Ariz. App. 432, 434 (1973).

**¶9**            Although an award must be set aside when the ALJ adopts an expert medical opinion that is not based in fact, *Desert Insulations, Inc. v. Indus. Comm'n*, 134 Ariz. 148, 151 (App. 1982), we disagree with Pate's characterization of Theiler's opinion in this case. It is true that, in his written report, Theiler mentioned that the available medical records indicated her shoulder complaints began after the swimming incident and that the MRI findings appeared more consistent with her injuring her shoulder in that incident. Because it was Pate's burden to establish the compensability of her claim, though, Theiler was not required to offer alternative theories to explain how Pate injured her shoulder.

**¶10**            Instead, as the ALJ correctly explained the relevant issue was whether the April 2015 fall caused Pate's injury, not whether a different incident did. The validity of Theiler's opinion testimony addressing this point did not turn on his surmise that Pate hurt herself swimming or on his conclusion that she lacked credibility. In fact, Theiler did not even mention Pate's swimming incident during his testimony. In opining that Pate did not suffer a torn rotator cuff in the fall, Theiler observed that her immediate reaction to the fall and her failure to seek medical treatment for nearly two years was entirely inconsistent with the severity of her injury. Pate does not attack the other factual bases of Theiler's opinion, nor does she attempt to otherwise demonstrate that the ALJ's exercise of her authority to adopt that testimony was unreasonable. Moreover, the ALJ's decision to adopt Theiler's testimony was not wholly unreasonable because, inter alia, Theiler is a board-certified orthopedic surgeon, he examined Pate and her medical records, and he was the only testifying expert who reviewed the video of Pate's fall. Accordingly, Pate fails to show the ALJ's award is unsupported by reasonable evidence.

## B.     Adequacy of Findings

¶11        Pate also argues the ALJ's credibility finding created an "irreconcilable conflict in the ALJ's award" and the ALJ's failure to explain how this conflict was resolved requires us to set aside the award under *Post*.

¶12        Our cases require an ALJ to include such an explanation, however, only when the conflict is *material* to resolving the case. *Post*, 160 Ariz. at 7 (noting that on "particular issue[s]" a lack of findings may "not invalidate an award per se"); *Sproul v. Indus. Comm'n*, 91 Ariz. 128, 132–33 (1962) ("[I]t is not essential under our statute that specific findings of fact be made on every issue which might be involved in a hearing, *provided that the findings as made are of such a nature that they necessarily dispose of all the material issues involved*." (quoting *Foster v. Indus. Comm'n*, 46 Ariz. 90, 92 (1935))).

¶13        As the ALJ made clear, to the extent Pate's credibility and Theiler's opinion conflicted, that conflict was not material to the issue of medical causation.  Pate's injury was not obvious to a layman, a fact borne out by the length of time it took for doctors to properly diagnose her injury despite her complaints about pain in her right arm.  In such a scenario, an injured worker must establish causation through expert medical testimony expressed in terms of reasonable medical probability.  *Payne v. Indus. Comm'n*, 136 Ariz. 105, 108 (1983). Thus, Pate's own belief that she sustained a compensable injury from her April 2015 fall was simply not relevant to the ALJ's resolution of the medical causation issue in this case. Instead, because the nature of her injury was not immediate and obvious, Pate was required to offer expert evidence on that subject. *See Eldorado Ins. Co. v. Indus. Comm'n*, 27 Ariz. App. 667, 670 (1976) ("While most lay persons have opinions and theories of their own as to how the human body functions, our courts have decided that, in order to recover compensation, a standard of expert evidence on the subject is required . . . .").  The record reflects that the ALJ reviewed the relevant medical records and testimony, including those favorable to Pate, concerning medical causation.  As indicated above, the ALJ explained why Theiler's opinion on medical causation was more probably correct and reasonable evidence supports that finding.

¶14        *Post* requires only that an ALJ explain his or her decision in a way that permits meaningful judicial review of the material issues.  Because this award meets that standard, we will not set it aside on that basis.

## CONCLUSION

¶15       We affirm the ICA's award.



AMY M. WOOD • Clerk of the Court
FILED:  AA